IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLES MARK CHILDERS,

        Petitioner,

vs.                                  No. CIV 04-478 WJ/LFG

ERASMO BRAVO, Acting Warden,
Lea County Correctional Facility, and
PATRICIA MADRID, Attorney General
of the State of New Mexico,

        Respondents.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1. This is a proceeding on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed May 3, 2004. Respondents filed their Answer [Doc. 7] on June 2, 2004. Petitioner Charles Mark Childers ("Childers") challenges the judgment and sentence entered by the Second Judicial District Court in State v. Childers, No. CR 01-1989 (County of Bernalillo, New Mexico).

### Factual and Procedural Background

2. In July 2001, Childers was charged in an eight-count grand jury indictment alleging the following crimes: Count 1: homicide by vehicle (DWI) or in the alternative homicide by vehicle

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommenda-tions. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

(reckless); Count 2: great bodily injury by vehicle (DWI) or in the alternative great bodily injury by vehicle (reckless); Count 3: aggravated DWI; Count 4: reckless driving; Count 5: failure to yield; Count 6: no driver's license; Count 7: driving while license suspended or revoked; and Count 8: concealing identity.  [Grand Jury Indictment, Doc. 1, Ex. 1].

3.  On September 3, 2002, Childers entered into a Plea and Disposition Agreement under which he agreed to plead guilty to Counts 1 and 2 of the indictment, Homicide by Vehicle (DWI), and Great Bodily Injury by Vehicle (DWI).  In return, the State agreed to an eight-year sentence cap with "[n]o other agreement as to sentencing," and agreed to dismiss the six other counts of the indictment.  In the plea agreement, Childers also gave up his right to appeal.  [Plea and Disposition Agreement, Doc. 7, Ex. B].

4.  Childers' plea was accepted at a plea hearing held September 3, 2002 [Transcript of Plea Hearing, cited herein as "PH"].  He was sentenced on December 17, 2002 [Transcript of Sentencing Hearing, cited herein as "SH"].  Judgment and Sentence was entered on January 9, 2003 [Doc. 7, Ex. A].  At the sentencing hearing and in the Judgment and Sentence, the court found that the offenses to which Childers pled were "serious violent offenses" for purposes of good time deductions, pursuant to N.M.S.A. (1978) § 31-15-18.  [Doc. 7, Ex. A, at 2].  Childers did not appeal his conviction but filed a petition for habeas corpus in state district court on December 19, 2003.  The petition was denied on February 20, 2004, and the state supreme court denied certiorari on March 31, 2004 [Doc. 7, Exs. E-H].

5.  The issues raised in the state habeas proceeding are the same as those raised in this federal petition.  Childers argues here, as he did in the state courts, that it was his understanding that the offenses to which he pled could be treated as non-violent offenses, and that he was denied effective

2

assistance of counsel in that his attorney failed to object at sentencing to the State's request that the Childers' crimes be categorized as "serious violent offenses." The relief Childers seeks is that the Court set aside the sentence entered by the state court and that he be given credit off his sentence in the amount of 1,022 days. [Doc. 1, at 4-5].

6. Childers has exhausted his state remedies. Respondent argues that the issues raised herein were adjudicated on the merits by the state courts, and the petition must be dismissed because Childers has not met his burden of showing that the state court proceedings resulted in a decision that was contrary to or involved unreasonable application of clearly established federal law, or that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. [Doc. 7, at 2-3].

7. The Court agrees that this is the correct standard to be applied in this action. 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000); Mitchell v. Gibson, 262 F.3d 1036, 1044 (10th Cir. 2001). A federal court "may not issue a habeas writ simply because we conclude in our 'independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gipson v. Jordan, 376 F.3d 1193, 1196 (10th Cir. 2004). "Federal habeas courts do not sit to correct errors of fact or to relitigate state court trials. Our jurisdiction is limited to ensuring that individuals are not imprisoned in violation of the Constitution." Thompson v. Oklahoma, 202 F.3d 283 (Table, text in Westlaw), No. 98-7158, 2000 WL 14404, at *6 (10th Cir. Jan. 10, 2000); Scrivner v. Tansy, 68 F.3d 1234, 1238 (10th Cir. 1995).

8. Childers' habeas petition raises the implicit claim that his plea was involuntary as it was based on the incorrect assumption that the crimes to which he pled would be considered nonviolent

3

offenses by the sentencing judge. He also claims that his attorney was ineffective for failing to object at sentencing when the State raised the "serious violent offenses" argument. The state court rejected these arguments and, a review of the record demonstrates that the state court's ruling was not unreasonable, on the facts or law. Childers' petition must therefore be denied.

## Voluntariness of Plea

9. On habeas review, a federal court may set aside a state guilty plea only for failure to satisfy due process. Miles v. Dorsey, 61 F.3d 1459, 1465 (10th Cir. 1995). A defendant has not been given due process unless his guilty plea was voluntarily and intelligently made. Id., *citing* Boykin v. Alabama, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711-12 (1969). "To the extent that the question on whether the defendant knowingly and voluntarily made the plea depends on findings of fact made by the state court on habeas review, these findings, with specified exceptions, carry a presumption of correctness." Cunningham v. Diesslin, 92 F.3d 1054, 1060 (10th Cir. 1996).   10. The crimes to which Childers pled guilty were Homicide by Vehicle (DWI) under N.M.S.A. (1978) § 66-8-101 (A) and (C); and Great Bodily Injury by Vehicle (DWI) under N.M.S.A. (1978) § 66-8-101(B) and (C), both third degree felonies. The statute provides that these crimes shall be sentenced pursuant to the provisions of N.M.S.A. (1978) § 31-18-15:

> When the court imposes a sentence of imprisonment for a felony offense, the court shall indicate whether or not the offense is a serious violent offense, as defined in Section 33-2-34 NMSA 1978. The court shall inform the offender that the offender's sentence of imprisonment is subject to the provisions of Sections 33-2-34 . . . . If the court fails to inform an offender that the offender's sentence is subject to those provisions or if the court provides the offender with erroneous information regarding those provisions, the failure to inform or the error shall not provide a basis for a writ of habeas corpus.

11. Under Section 33-2-34, the offenses of third degree Homicide by Vehicle, and Great

Bodily Injury by Vehicle, may be deemed "serous violent offenses" if the sentencing court so determines, taking into account the nature of the particular offense and the resulting harm. N.M.S.A. (1978) § 33-2-34(L)(4)(n). Under the statute, a prisoner confined for committing a nonviolent offense can earn up to 30 days per month in meritorious deductions (thus resulting in an effective 50 percent reduction in his sentence). However, if the crime is deemed a serious violent offense, the maximum deduction is four days per month, N.M.S.A. (1978) § 33-2-34(A), which means the defendant will serve at least 85 percent of his sentence).

12.  Childers does not dispute, and the record supports the fact, that he was aware that he faced a maximum sentence of eight years on the charges to which he was pleading. Childers appeared before New Mexico District Judge Mark A. Macaron on September 3, 2002, at a hearing on the plea agreement. The Assistant District Attorney prosecuting the case informed the court that the State and the defendant reached an agreement whereby the State would agree to an eight-year cap at initial sentencing, and "[t]here is no other agreement as to sentencing." Both Childers and his attorney stated that was also their understanding of the agreement. Childers told the court, under oath, that he signed the plea agreement, that he read it before signing, that he had adequate time to speak to his attorney about the terms of the agreement, and that he fully understood the terms of the agreement. He testified that he was voluntarily entering into the agreement, that no one forced him in any way to sign the agreement, and that he was not promised anything in exchange for his plea that was not contained in the written plea agreement. [PH at 2-4].

13.  Also at the plea hearing, the court informed Childers of the rights he was giving up by entering into the agreement, and Childers assured the court that he understood his rights and the fact that he was waiving them. He stated he was satisfied with his attorney's representation. Childers'

counsel told the court that he went over the plea agreement with his client, and he was satisfied that Childers understood it and entered into it voluntarily. The court reviewed for Childers the factual basis of his plea. Childers testified that the facts as described were accurate, and he admitted committing the acts charged as well a prior DWI conviction. [PH, at 3-10].

14. The court also notified Childers that his total exposure for the crimes to which he was pleading was 13 years but that the parties had agreed to a cap of eight years. The judge informed him that if the court accepted the agreement, his sentence at initial sentencing could not exceed eight years, but that the full 13-year sentence could be imposed if he violated the terms of his probation. Childers stated that he understood this, and his counsel agreed that the court stated Childers' exposure accurately. [PH at 8-10].

15. The record is clear that Childers was aware that he faced a sentence of eight years, which is the sentence he was ultimately given. He argues, however, that he assumed he would only have to serve 50 percent of the time sentenced, based on his expectation that he would be eligible to receive good time credits of 30 days per month pursuant to Section 33-2-34(A). He implicitly argues that his plea was involuntary because he accepted the plea agreement under a faulty assumption. He claims that "[i]t was Petitioner's understanding that these two offenses could be treated as non-violent offenses" [Doc. 1, at 4], and that his "plea of guilty was entered with the understanding that he would only have to serve 50% of eight years. There was never an indication that the State would be asking for a more harsh level of classification than 50%." [Id.].

16. Childers does not argue that the State misled him into assuming he would only have to serve 50 percent of his sentence; he states only that it was his understanding that the offenses "could be treated as non-violent offenses." This understanding is correct; the court *could* have treated the

6

offenses as non-violent. However, it is also correct that under the statute the offenses could have been treated as serious violent offenses, depending on the circumstances, and that is how the court determined they should be treated.

17. In his petition for certiorari to the state supreme court following denial of his state habeas petition, Childers alleges that:

> It was the understanding of all parties prior to the sentencing date that these two offense[s] could be treated as non-violent offenses. It was only at the sentencing hearing that the assistant district attorney first notified the court, the trial defense counsel and the Petitioner that the State was seeking a more harsh sentence . . . . At the time of the plea agreement, the Petitioner understood that he would be eligible to receive good time credit in the amount of fifty percent (50%). Petitioner understood this because at no time prior to sentencing did the State ever express a desire for anything other than fifty percent (50%) good time. Petitioner was not notified prior to the sentencing hearing that the State would seek to have the offense treated as a serious violent offense, which would only entitl[e] Petitioner to a fifteen percent (15%) credit for good time.

[Doc. 7, Ex. G, at 3-4].

18. The record does not support a finding that the parties had an agreement, or mutual understanding of any sort, to the effect that the State would not seek the serious violent offense designation. There is no allegation of a promise by the State not to press for the serious violent offense determination, and nothing on the record would support such an allegation. To the contrary, the plea agreement specifically stated that no promises had been made to Childers other than what appeared in the agreement and that there were no side or secret agreements, and the court was informed by the State at the plea hearing that no other promises had been made. Childers confirmed, under oath, that he was not promised "anything not contained in the agreement" in exchange for his plea. If Childers assumed the crimes would be treated as nonviolent, he did so at his peril as there

was no basis in the plea agreement or in the plea colloquy to support such an assumption. Simply put, the parties never discussed the issue.

19. On this record, the Court finds that Childers' plea was knowing and voluntary, and the state courts did not act unreasonably in rejecting Childers' contention that he agreed to the plea on the assumption he would have to serve only one-half of the sentence he was given. In ruling on Childers' state habeas petition, the district court noted that the statutes which provide for designation of Childers' offenses as serious violent offenses have been effect since July 1, 1999, and "were sufficient notice to the Defendant that he would be subject at sentencing to a serious violent offender determination under the EMDA [Earned Meritorious Deductions Act] for his offense which occurred on June 10, 2001." [Record Proper, at 109, hereafter referred to in the format "RP, at 109"]. The court further noted:

> In addition, the presentence report with a police report and victim's letter attached described the incident as well as physical and emotional injuries to the victims. This information was not a surprise to the Defendant or his attorney. It does not appear by the record of the proceedings that the Defendant's attorney was surprised by the State's request for serious violent offender classification. In addition, while he had the opportunity at the sentencing hearing to do so, the Defendant personally did not then state that he was surprised by the State's request. He further did not raise this claim until December 19, 2003, more than a year after his December 17, 2002 sentencing hearing. The Defendant also does not contend then or now that he was surprised by the presentence report or any other information presented to the Court at the sentencing hearing.

[RP, at 110].

20. Furthermore, even if this Court were to find the state court's ruling unreasonable it could not give Childers the relief he is seeking, which is an order that his sentence be reduced. The appropriate remedy for a habeas petitioner who asserts an involuntary plea is withdrawal of the plea.

Gill v. Turner, 443 F.2d 1064, 1066 (10th Cir. 1971). A court's determination on habeas review that a plea was involuntary is not an adjudication of the petitioner's guilt or innocence and does not constitute a bar to further proceedings based on the original indictment. Wynn v. Page, 390 F.2d 545, 546 (10th Cir. 1968). Upon withdrawal of a guilty plea found to have been involuntarily made, the State has the option of trying a petitioner on all original charges including any that were dropped in connection with the plea agreement and, if convicted, the petitioner could be sentenced to a substantially longer term than he received under the voided plea agreement. Indeed,

> it should be pointed out to [Petitioner] and many others who are filing petitions for a writ of habeas corpus in this court, that it is possible that some may be doing themselves more harm than good.

Shupe v. Sigler, 230 F. Supp. 601, 606-07 (D. Neb. 1964).

### Ineffective Assistance of Counsel

21. Childers also faults his trial counsel for his failure to object at the sentencing hearing when the State asked the court to categorize the crimes as serious violent offenses. A habeas petitioner alleging ineffective assistance of counsel bears the burden of showing not only that his counsel's performance was constitutionally defective, but also that counsel's errors prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). The Strickland standards apply to claims of ineffective assistance arising out of the plea process. Hill v. Lockhart, 474 U.S. 52, 57-58, 106 S. Ct. 366, 371 (1985). Childers has failed to meet his burden.

22. As noted above, the state habeas judge held that the information presented to the sentencing court, detailing the nature of the offense and its impact on the victims, was not a surprise to Childers or his attorney, and the record of the proceedings does not support a finding that defense counsel was surprised by the State's request for serious violent offender classification. This finding

is supported by the record and was not unreasonable.

23. One person was killed in the drunk driving incident which led to the charges against Childers and his eventual conviction. The decedent's ex-wife and the mother of his child testified at the sentencing hearing, as did decedent's then-current wife who was also severely injured in the accident. Both women outlined the substantial negative effect the accident had on them and their children, and both asked the court to impose the maximum sentence. Decedent's wife also asked that the court "rule on the 85 percent law." [SH, at 7-9]. The assistant district attorney argued for application of the 85 percent rule (*i.e.*, that petitioner receive 4 days per month of meritorious deductions, instead of 30 days, because of the "serious violent offense" designation), based on the high level of alcohol in Childers' blood following the accident, the fact that he had a prior DWI conviction and a history of alcohol abuse, and the fact that one person was killed in the accident and another seriously injured. [SH, at 14-16].

24. As the state habeas judge noted, there is no indication from the transcript of the sentencing hearing that Childers' attorney was surprised by the State's argument for serious violent offender status. Defense counsel skillfully negotiated a favorable plea and made a thoughtful argument on behalf of Childers at the hearing, describing the defendant's struggles with a drinking problem and his efforts following the accident to maintain sobriety and avoid alcohol. Defense counsel argued forcefully against imposition of the 85 percent rule. [SH at 18-22]. The court considered but rejected these arguments, finding that the crimes should be considered serious violent offenses under the circumstances of the case, in light of Childers' prior DWI conviction, his knowledge that he had a problem with alcohol but chose to drive anyway, the high level of blood alcohol even three hours after the accident, and the extensive physical and emotional harm suffered

by the victims. [SH, at 25-28]. The fact that defense counsel was unable to persuade the court that the crimes were not violent has no bearing on his constitutional effectiveness.

25. Childers' state habeas petition was decided by the same judge who sentenced him. In his ruling on the habeas petition, he rejected Childers' claim of ineffective assistance at sentencing, noting:

> The record establishes that Petitioner's attorney at sentencing was well prepared and presented substantial and compelling arguments on the Petitioner's behalf including a request that the Court not find that Petitioner's offense to be a serious violent offense under the law. In addition, the Petitioner's attorney presented a substantial number of letters in addition to testimony at the sentencing proceeding on Petitioner's behalf.
>
> ***
>
> Although he had the opportunity to do so, the Defendant has not disputed any of the facts stated on the record at the sentencing proceeding or the information contained in the presentence report. While the Defendant now . . . [implies] that he was unprepared at the sentencing hearing to provide the district court with information about the offense, he did not challenge the factual basis of the prosecutor's account of the nature of the crime or its resulting and far reaching harm at the sentencing hearing. He further does not do so here. This leads to the conclusion that the Defendant did not have evidence which would have led to a different result on the serious violent offender determination made by the Court.
>
> ***
>
> The record does not indicate any basis which would support a conclusion other than that Petitioner received effective assistance of counsel at the sentencing proceeding.

[RP, at 109].

26. Childers faults his attorney for not objecting at the sentencing hearing, at the point when the State began its argument that these crimes were serious violent offenses. The record indicates that the State's argument was not a surprise to either Childers or his counsel, and the state habeas court so found. There is nothing on the record to indicate otherwise, and nothing to support

11

Childers' current claim that he assumed that there was some sort of agreement between the parties that the "serious violent offense" argument would not be pressed. His attorney argued against application of the rule, an argument which was clearly rejected on the merits, so Childers cannot complain that counsel failed to raise the issue and that the result would have been different if counsel had done so.

     27. Rather, Childers' only complaint is that his attorney failed to object to the State's bringing up the "serious violent offense" argument. But it would have made sense for defense counsel to object at that point, only if the parties had based their plea agreement on an explicit understanding that the State would not present that argument to the court. As noted previously, there is nothing on the record to show any such understanding. Even if trial counsel had made an "erroneous sentence estimate," that would not render the plea involuntary nor would it constitute ineffective assistance of counsel in the absence of petitioner's reliance on a material misrepresentation by counsel, which in any event was not alleged in this case. Braun v. Ward, 190 F.3d 1181, 1190 (10th Cir. 1999); United States v. Williams, 919 F.2d 1451, 1456 (10th Cir. 1991). The record as a whole supports the trial judge's determination that defense counsel afforded Childers a constitutionally effective defense, and nothing in the record supports Childers' claims that his attorney's performance fell below the objective standard of reasonableness. Strickland v. Washington, *supra*.

     28. This Court defers to the state court's ruling that Childers was provided effective assistance of counsel in connection with his plea and sentencing.

## **Recommended Disposition**

That Childers' petition be denied, and that the action be dismissed with prejudice.

                                                                                  *Lorenzo F. Garcia*
                                                                                  Lorenzo F. Garcia
                                                                                  Chief United States Magistrate Judge